UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MCKINNIE, an individual,<br><br>                    Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO, a municipality; OFFICER HOFFSTETTER (Badge No. 5773), an individual; and DOES 1-50, inclusive,<br><br>                    Defendants. | Case No.: 3:24-cv-00827-H-SBC<br><br>**ORDER DENYING DEFENDANT CITY OF SAN DIEGO'S MOTION TO DISMISS**<br><br>[Doc. No. 4.] |

On May 29, 2024, Defendant City of San Diego (the "City" or "Defendant") filed a motion to dismiss Plaintiff John McKinnie's ("Plaintiff") first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 4.) On June 17, 2024, Plaintiff filed a response in opposition to Defendant's motion to dismiss. (Doc. No. 5.) On June 24, 2024, the City filed a reply. (Doc. No. 6.) On August 15, 2024, the City and Plaintiff filed a joint motion to continue the hearing on Defendant's motion to dismiss. (Doc. No. 15.) On August 19, 2025, the Court, pursuant to its discretion under Local Rule 7.1(d)(1), submitted the motion on the parties' papers. (Doc. No. 16.) For the reasons below, the Court denies Defendant City of San Diego's motion to dismiss.

/ / /

**BACKGROUND**

The following factual background is taken from the allegations in Plaintiff's first amended complaint.  Plaintiff is a Black man over the age of fifty.  (Doc. No. 3 ¶ 8, First Amended Complaint ("FAC").)  On July 6, 2023, Plaintiff alleges that he was pulled over by San Diego Police Department ("SDPD") Officer Hoffstetter (Badge No. 5773) because Plaintiff was allegedly on probation.  (Id. ¶ 9.)  Plaintiff, however, claims that he was not on probation.  (Id.)  Plaintiff further alleges that there was "never any indication that [he] had violated any traffic laws to necessitate the stop."  (Id.)  Plaintiff claims that he was then ordered to get out of his vehicle.  (Id. ¶ 10.)  Plaintiff complied with this request and was immediately handcuffed and searched.  (Id.)  Plaintiff was "detained for some time," but was ultimately let go.  (Id. ¶ 11.)  "No charges were ever filed, nor any citations issued as a result of this encounter."  (Id.)  Plaintiff alleges that "[b]ut for [his] race, [his] rights would not have been trampled on by the police."  (Id. ¶ 13.)  As a result of this encounter, Plaintiff alleges that he suffered economic and non-economic damages including, but not limited to, emotional distress, pain, and suffering.  (Id. ¶¶ 14, 42, 56, 60, 71.)

On April 9, 2024, Plaintiff filed a complaint against Defendants City of San Diego (the "City"), San Diego Police Department, Officer Hoffstetter (Badge No. 5773), and David Nisleit in the Superior Court of California, County of San Diego.  (Doc. No. 1-2.)  On May 9, 2024, Defendants removed Plaintiff's action from the Superior Court of California, County of San Diego to this Court pursuant to 28 U.S.C. § 1441 on the basis of original federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.  (Doc. No. 1.)  On September 18, 2023, Plaintiff filed a first amended complaint only against the City and Officer Hoffstetter (Badge No. 5773), alleging claims for: (1) false arrest, 42 U.S.C. § 1983; (2) false imprisonment, 42 U.S.C. § 1983; (3) failure to properly screen and hire, 42 U.S.C. § 1983; (4) failure to properly train, 42 U.S.C. § 1983; (5) failure to properly supervise and discipline, 42 U.S.C. § 1983; (6) maintaining an unconstitutional policy of making illegal traffic contacts without reasonable suspicion or probable cause and "contacting, detaining, searching, and arresting citizens

based on unlawful racial profiling," 42 U.S.C. § 1983; (7) intentional infliction of emotional distress; and (8) violations of the Bane Act, Cal. Civ. Code § 52.1.  (See Doc. No. 3, FAC.)  By the present motion, the City moves to dismiss Plaintiff's third, fourth, fifth, sixth, and eighth causes of action in his first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  (Doc. No. 4.)

## DISCUSSION

### I.  LEGAL STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be granted.  See Conservation Force v. Salazar, 646 F.3d 1240, 1241 (9th Cir. 2011) (citing Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001)).  Federal Rule of Civil Procedure 8(a)(2) requires that a pleading that states a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The function of this pleading requirement is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Id. (quoting Twombly, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action,

---

[1] At the time the City filed its motion to dismiss, the City informed the Court that Plaintiff had not served Defendant Officer Hoffstetter (Badge No. 5773). (Doc. No. 4-1 at 5 n.1.)  Thus, the present motion to dismiss is filed only on behalf of the City.  (See id.)

supported by mere conclusory statements, do not suffice." Id.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679.  Accordingly, dismissal for failure to state a claim is proper where the claim "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008); see Los Angeles Lakers, Inc. v. Fed. Ins. Co., 869 F.3d 795, 800 (9th Cir. 2017).

In reviewing a Rule 12(b)(6) motion to dismiss, a district court must "'accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff.'" Los Angeles Lakers, 869 F.3d at 800 (quoting AE ex rel. Hernandez v. Cty. of Tulare, 666 F.3d 631, 636 (9th Cir. 2012)).  But a court need not accept "legal conclusions" as true. Iqbal, 556 U.S. at 678.  "Further, it is improper for a court to assume the claimant "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).  In addition, a court may consider documents incorporated into the complaint by reference and items that are proper subjects of judicial notice. See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010).  If the court dismisses a complaint for failure to state a claim, it must then determine whether to grant leave to amend. See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).  "A district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." Id.

**II.   ANALYSIS**

The City moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss with prejudice Plaintiff's third, fourth, fifth, sixth, and eighth causes of action in the first amended complaint. (Doc. No. 4.)  Specifically, the City argues that Plaintiff's first amended complaint contains conclusory allegations and insufficient factual information regarding Plaintiff's claims for failure to properly screen and hire, failure to properly train, failure to properly supervise and discipline, Monell violation for making illegal traffic contacts, and violations of the Bane Act. (Doc. No. 4-1 at 5.)

A. **Plaintiff's Third, Fourth, Fifth, and Sixth Causes of Action Under § 1983 and Monell**

In the first amended complaint, Plaintiff asserts four causes of action against the City under 42 U.S.C. § 1983 for: (1) failure to properly screen and hire (Count III); (2) failure to properly train (Count IV); (3) failure to properly supervise and discipline (Count V); and (4) "maintain[ing] a custom, policy, or practice . . . of making inappropriate and illegal traffic contacts despite lacking reasonable suspicion or probable cause" and "contacting, detaining, searching and arresting citizens based on unlawful racial profiling" (Count VI). (Doc. No. 3, FAC ¶¶ 36–60.)

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."). Local governments can be sued under § 1983, but not under a respondeat superior liability theory. Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997). In other words, the City cannot be liable under § 1983 solely because it employs a tortfeasor employee. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Rather, Plaintiff must demonstrate the alleged constitutional deprivation was the product of a City policy, practice, or custom. Brown, 520 U.S. at 403; City of Canton v. Harris, 489 U.S. 378, 385 (1989); Monell, 436 U.S. at 690–91.

To impose Monell liability on a municipality under Section 1983, "four conditions . . . must be satisfied . . . : (1) that the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." Dietrich v. John Ascuaga's Nugget, 548

F.3d 892, 900 (9th Cir. 2008) (quoting Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir.1996)).

"A plaintiff can satisfy Monell's policy requirement in one of three ways." Gordon v. Cnty. of Orange, 6 F.4th 961, 973 (9th Cir. 2021). "First, a local government may be held liable when it acts 'pursuant to an expressly adopted official policy.'" Id. (quoting Thomas v. County of Riverside, 763 F.3d 1167, 1170 (9th Cir. 2014)). "Second, a public entity may be held liable for a 'longstanding practice or custom.'" Gordon, 6 F.4th at 973 (quoting Thomas, 763 F.3d at 1170). For example, "[a] policy of inaction or omission may be based on failure to implement procedural safeguards to prevent constitutional violations." Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1143–44 (9th Cir. 2012) (lack of police safeguards to distinguish between trespassers and invitees in a Las Vegas casino resulting in the wrongful arrest of lawful invitees was a policy of omission). And third, a plaintiff can show that "'the individual who committed the constitutional tort was an official with final policy-making authority,'" or that "such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" Gordon, 6 F.4th at 974 (quoting Gillette v. Delmore, 979 F.2d 1342, 1346–47 (9th Cir. 1992)).

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick v. Thompson, 563 U.S. 51, 61 (2011). "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." Id. (citing Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 407 (1997)). "The city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution." Id. at 61–62 (internal quotation marks and citation omitted).

/ / /

### 1.     Failure to Properly Screen and Hire (Claim III)

In the FAC, Plaintiff alleges against the City a claim for failure to properly screen and hire police officers, including Officer Hoffstetter, under 42 U.S.C. § 1983. (Doc. No. 3, FAC ¶¶ 36-42.)  A claim for failure to properly screen and hire is assessed under the "deliberate indifference" standard.  Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 398 (1997).  "Deliberate indifference" in screening and hiring exists "only where adequate scrutiny of the applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right."  Id.

Defendant argues that Plaintiff's failure to properly screen and hire claim fails because Plaintiff does not provide sufficient facts about the City's hiring practices or Officer Hoffstetter's background to support an allegation that the City was "deliberately indifferent" in its screening and hiring processes. (Doc. No. 4-1 at 7–8.)  Plaintiff responds that "the complete lack of probable cause or reasonable suspicion" to justify Officer Hoffstetter's alleged stop and search of Plaintiff, as well as Defendants' alleged "racial profiling," "can only be the product of poor screening and hiring practices," so that "it can easily be inferred that the City's negligent hiring and screening practices were the moving force" behind the alleged illegal stop and search of Plaintiff.  (Doc. No. 5 at 9–10.)

Drawing all inferences in favor of Plaintiff, Plaintiff has alleged sufficient facts to state a claim that the City failed to properly screen and hire.  Accordingly, the Court declines to dismiss Plaintiff's failure to properly screen and hire claim at the pleading stage. See, e.g., Foster v. Cnty. of San Diego, No. 11-CV-1953-H (BGS), 2011 WL 13152845, at *2 (S.D. Cal. Oct. 20, 2011) (denying dismissal of failure to properly screen and hire claim where Plaintiff argued the Court could draw an inference that the officers were not properly screened for hiring based on the circumstances of alleged misconduct in complaint). Defendant's arguments are best suited for a motion for summary judgment when the record is more fully developed.

/ / /

### 2. Failure to Properly Train (Claim IV)

In the FAC, Plaintiff alleges against the City a claim for failure to properly train police officers "necessary to educate the officers as to the Constitutional rights of arrestees," and as to "the consistent and systematic use of inappropriate intimidation, discrimination, and racially-profiling tactics." (Id. ¶¶ 43-49.) "To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." Benavidez v. Cnty. of San Diego, 993 F.3d 1134, 1153–54 (9th Cir. 2021); see also Kirkpatrick v. Cnty. of Washoe, 843 F.3d 784, 793 (9th Cir. 2016) ("[T]he government's omission must amount to a 'policy' of deliberate indifference to constitutional rights.")  Because "deliberate indifference" is a "stringent standard," Connick 563 U.S. at 61, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Id. at 62 (quoting Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 409 (1997)).

The City first argues that Plaintiff's claim for failure to properly train should be dismissed because Plaintiff fails to adequately allege the City's training policy amounts to deliberate indifference to constitutional rights. (Doc. No. 4-1 at 9.)  Here, Plaintiff's FAC cites four studies detailing alleged discriminatory policing by SDPD.  (Doc. No. 3, FAC ¶¶ 15-22.)  Plaintiff argues that these statistics illustrate a "pattern demonstrat[ing] that the municipality has shown a deliberate indifference to the rights of people of color in San Diego," and at this stage in the litigation, "must be taken as true and all reasonable inferences are to be drawn from them." (Doc. No. 5 at 11–12 (citing Navarro v. Block, 250 F. 3d 729, 732 (9th Cir. 2001).)  The Court agrees with Plaintiff.  Plaintiff alleges a pattern of unconstitutional violations beyond the single incident of one officer's alleged misconduct sufficient to allege deliberate indifference to constitutional rights.  (See Doc. No. 3, FAC ¶¶ 15-22.)

Next, the City asserts that Plaintiff does not allege that the City had notice regarding alleged deficiencies in its training program. (Id.) But, a plaintiff "does not need to prove notice at this stage[.]" Astorga v. Cnty. of San Diego, No. 321CV00463BENKSC, 2022 WL 1556164, at *8 (S.D. Cal. May 17, 2022); see also Hendrix v. City of San Diego, 2021 WL 3892671, at *8 (S.D. Cal. Aug. 11, 2021) ("On a motion to dismiss, the plaintiff need not prove that the supervisors had 'notice that the training on the use of force was inadequate and consciously chose not to implement or improve the training.'") (quoting Santos Garcia v. San Bernardino Sheriff's Dep't, 2020 WL 8365260, at *9 (C.D. Cal. Dec. 8, 2020)).

Drawing all inferences in favor of Plaintiff, Plaintiff has alleged sufficient facts to state a claim that the City failed to properly train police officers. Accordingly, the Court declines to dismiss Plaintiff's failure to properly train claim at the pleading stage. See, e.g., Foster, 2011 WL 13152845, at *2 (denying dismissal of failure to properly train claim where Plaintiff argued the Court could draw an inference that the officers were not properly trained based on the circumstances of alleged misconduct in complaint). Again, Defendant's arguments are best suited for a motion for summary judgment when the record is more fully developed.

### 3. Failure to Properly Supervise and Discipline (Claim V)

In the FAC, Plaintiff alleges against the City a claim for failure to properly supervise and discipline police officers under 42 U.S.C. § 1983 "in order to prevent the consistent and systematic use of inappropriate intimidation, discrimination, and racially-profiling tactics." (Doc. No. 3, FAC ¶¶ 50-56.) "A failure to supervise gives rise to § 1983 liability . . . only in those situations where there is a history of wide-spread abuse. Only then may knowledge be imputed to the supervisory personnel." Wellington v. Daniels, 717 F.2d 932, 936 (4th Cir. 1983) (cited with approval in City of Canton, 489 U.S. at 398 (O'Connor, Scalia, and Kennedy, JJ., concurring and dissenting in part)).

The City argues that Plaintiff's FAC "only includes . . . conclusory allegations" and "does not allege any specific prior incidents of failing to supervise or discipline police

officers for alleged 'consistent and systematic use of inappropriate intimidation, discrimination, and racially-profiling tactics' in similar scenarios." (Doc. No. 4-1 at 12 (citing Doc. No. 3, FAC ¶ 51).) Plaintiff's FAC cites four studies, three of which are from 2016-2020, detailing alleged discriminatory policing by SDPD. (See Doc. No. 3, FAC ¶¶ 15–22.) Drawing all inferences in favor of Plaintiff, these allegations of discriminatory policing over a four-year period are sufficient to plead a "history of wide-spread abuse" to state a failure to supervise claim. See e.g., Wellington 717 F.2d at 936; see also Rendon v. Fresno Police Dep't, 2005 WL 1925859, at *5 (E.D. Cal. Aug. 11, 2005) ("Plaintiff need not satisfy all of the requirements [of failure to supervise claim] set forth above at the motion to dismiss stage.").

Accordingly, the Court declines to dismiss Plaintiff's failure to properly supervise and discipline at the pleading stage. See, e.g., Foster, 2011 WL 13152845, at *2 (denying dismissal of failure to properly supervise and discipline claim where Plaintiff argued the Court could draw an inference that the officers were not properly supervised and disciplined based on the circumstances of alleged misconduct in complaint); see also Rendon, 2005 WL 1925859, at *5 (denying motion to dismiss failure to supervise claim where plaintiff alleged that City of Fresno negligently trained, staffed, supervised, controlled, and disciplined defendants, leading to plaintiff's injuries). Defendant's arguments are best suited for a motion for summary judgment when the record is more fully developed.

### 4. Conducting Traffic Stops Without Reasonable Suspicion or Probable Cause (Claim VI)

In the FAC, Plaintiff alleges the City committed a Monell violation of "making inappropriate and illegal traffic contacts despite lacking reasonable suspicion or probable cause," resulting in "excessive force, falsely arresting, and otherwise burdening citizens." (Doc. No. 3, FAC ¶¶ 57–58.) The FAC also alleges that the City "maintained an unconstitutional policy with respect to contacting, detaining, searching and arresting citizens based on unlawful racial profiling" under 42 U.S.C. § 1983. (Id. ¶ 60.)

Defendant argues that Plaintiff "does not and cannot show" that the City had "an actual recorded policy or a persistent and widespread practice" of making illegal traffic stops, using excessive force, or of falsely arresting. (Doc. No. 4-1 at 13.) Defendant further argues that the "Plaintiff's use of the four studies/reports fails to support their Monell claim" of the City's alleged deliberate indifference to the constitutional rights of the individuals with whom its police officers are likely to come into contact. (Id.) Plaintiff responds that to state a Section 1983 claim, he need not allege an official written policy, but rather that he has fulfilled the required elements by alleging "a widespread practice of constitutional violations that constituted an unspoken policy . . . of targeting Black citizens who are or were on probation." (Doc. No. 5 at 13.)

Plaintiff does not need to allege a recorded policy, but rather can allege a "longstanding practice or custom" to satisfy Monell's policy requirement. See Gordon, 6 F.4th at 973. Here, the four studies cited in the FAC (Doc. No. 3, FAC ¶¶ 15–21) "suggest that SDPD discriminates based on race and color with regard to traffic stops and prosecutions." Whyte v. City of San Diego, 2022 WL 17491178, at *5 (S.D. Cal. Dec. 7, 2022). Plaintiff alleges that his "experience proves to be in line with SDPD's documented patterns and practices" as allegedly reported in the studies. (Doc. No. 3, FAC ¶ 22.) Plaintiff has pleaded sufficient facts to allege a § 1983 Monell violation. Accordingly, dismissal is not warranted. Again, Defendant's arguments are best suited for a motion for summary judgment when the record is more fully developed.

**B.  Plaintiff's Cause of Action Under The Bane Act (Claim VIII)**

Plaintiff also asserts a claim against the City for violations of the Bane Act, California Civil Code § 52.1. (Doc. No. 3, FAC ¶¶ 66–73.) The Bane Act, California Civil Code § 52.1, provides a private cause of action against anyone who "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by an individual or individuals of rights secured by the Constitution or laws of the United States, or laws and rights secured by the Constitution or laws of California." Cal. Civil Code § 52.1(a). Section 52.1 requires "an attempted or

completed act of interference with a legal right, accompanied by a form of coercion." Jones v. Kmart Corp., 17 Cal. 4th 329, 334 (1998); accord Austin B. v. Escondido Union Sch. Dist., 149 Cal. App. 4th 860, 882 (2007). "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." Austin B., 149 Cal. App. 4th at 883 (quoting Jones, Cal. 4th at 334).

Defendant argues, and Plaintiff concedes, that the Bane Act is subject to the claims presentation requirement under the Government Claims Act. See Cal. Gov't Code §§ 905, 911.2. (See also Doc. Nos. 4-1 at 14; 5 at 14.) Under the Government Claims Act, a claim for money damages against a local public entity must be presented to the entity within six months or a year after the cause of action accrues depending on the cause of action. See Cal. Gov't Code §§ 905, 911.2. "[F]ailure to allege facts demonstrating or excusing compliance with the claim presentation requirement subjects a claim against a public entity to a [motion to dismiss] for failure to state a cause of action." State v. Superior Ct., 32 Cal. 4th 1234, 1239 (2004) (citing Cal. Gov't Code §§ 905, 911.2, 945.4).

The standard for fulfilling the claims presentation requirement is substantial compliance. Carlino v. Los Angeles Cnty. Flood Control Dist., 10 Cal. App. 4th 1526 (1992). "If a claim satisfies the purposes of the claims statutes without prejudice to the government, substantial compliance will be found." Aquino v. Cnty. of Monterey Sheriff's Dep't, No. 5:14-CV-03387-EJD, 2018 WL 3659012, at *1 (N.D. Cal. Aug. 2, 2018). "If the claim gives adequate information for the public entity to investigate, additional detail and elaboration in the complaint is permitted." Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth., 34 Cal. 4th 441, 449 (2004).

Here, the City argues that Plaintiff's Bane Act claim must be dismissed due to Plaintiff's failure to present the Bane Act cause of action in a claim to the City, failure to name the officer in the claim form, and failure to allege the officer's violence or threat of violence in the claim. (Doc. No. 4-1 at 14–17.) The City does not argue that Plaintiff's

claim form was untimely submitted. (Doc. Nos. 4-1 at 14–17; 5 at 10.) Plaintiff argues that he substantially complied. (Doc. No. 5 at 14.) First, Plaintiff asserts that he listed Officer Hoffstetter's badge number (Badge No. 5773) in the claim form given that Plaintiff was unaware of Officer Hoffstetter's name at the time of submission. (Id.) Second, Plaintiff argues that the claim form, which indicates that the City and its employees violated Plaintiff's "constitutional rights under the 4th, 5th, 8th, and 14th Amendments" and that Plaintiff was "harassed, degraded, and subjugated for no reason during a traffic stop," adequately informed Defendant of the nature of Plaintiff's claims. (Id. at 15–16.)

The first amended complaint alleges substantial compliance. Plaintiff's FAC pleads compliance with the Government Claims Act. (Doc. No. 3, FAC ¶ 7) ("On September 28, 2023, Plaintiff timely filed a claim for damages with the City, as required by California Government Code § 910.") Plaintiff's claim form provided the badge number of Office Hoffstetter (Doc. No. 4-3 at 3), and detailed Plaintiff's perceived violations, including that Plaintiff "was racially profiled, unlawfully detained, unlawfully searched, and handcuffed without probable cause or even a reasonable suspicion" (id.). This account provided the City with sufficient information to allow it to make a thorough investigation of the matter, including any potential Bane Act violations. See Aquino, 2018 WL 3659012, at *2. In sum, the Court denies Defendant's request to dismiss Plaintiff's Bane Act claim.

## CONCLUSION

For the foregoing reasons, the Court denies Defendant City of San Diego's motion to dismiss. The City must file an answer to Plaintiff's complaint within 30 days from the date this order is filed.

**IT IS SO ORDERED.**

DATED: September 9, 2024

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT